UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SABRINA SIMON,

    Plaintiff,

v.                                                   Case No: 8:24-cv-2586-TPB-CPT

NATIONAL PASSENGER
CORPORATION d/b/a AMTRAK, *et al.*,

    Defendants.
_____/

**ORDER GRANTING IN PART "DEFENDANT NATIONAL RAILROAD
PASSENGER CORPORATION D/B/A AMTRAK'S SUPPLEMENTAL MOTION TO
DISMISS PLAINTIFF'S COMPLAINT OR IN THE ALTERNATIVE MOTION TO
COMPEL ARBITRATION AND STAY CASE;" and
ORDER DISMISSING WITHOUT PREJUDICE COUNTS I, II, III, AND IV**

    This matter is before the Court on "Defendant National Railroad Passenger Corporation d/b/a Amtrak's Supplemental Motion to Dismiss Plaintiff's Complaint or in the Alternative Motion to Compel Arbitration and Stay Case," filed on December 19, 2024. (Doc. 12). Plaintiff Sabrina Simon filed a response in opposition on January 10, 2025. (Doc. 20). After reviewing the motion, response, court file, and record, the Court finds as follows:

**Background**

    This case arises from a train collision that occurred on July 14, 2023, between Amtrak Passenger Train 17 and a commercial truck operated by Defendant Walberto Carrazana Bermudez. Plaintiff Sabrina Simon, who was injured in the accident, was a passenger on the train operated by Defendant National Railroad Passenger Corporation d/b/a Amtrak. The 2005 Peterbilt commercial truck was

owed by Defendant Lastre Auto and was hauling a commercial auto trailer owned by Defendant M & L Auto at the time of the collision – the trailer was loaded with multiple automobiles. While Bermudez was navigating the railroad crossing, the commercial auto trailer became stuck on the train tracks. Around that time, Amtrack Train 17 was traveling from Lakeland, Florida, heading east to northeast.

In her five-count complaint, Plaintiff asserts several causes of action sounding in negligence against Defendants. Amtrak has moved to compel arbitration of Plaintiff's claims, relying on the arbitration provision in the terms and conditions agreed to by Plaintiff when she purchased her train ticket. Plaintiff, however, argues that this arbitration agreement is unenforceable.

## Legal Standard

When addressing a motion to compel arbitration, a reviewing court treats the motion similarly to a motion for summary judgment. *See Bazemore v. Jefferson Cap. Sys. LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). To that end, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Id*. A genuine dispute must be supported by evidence, and the Eleventh Circuit "'has consistently held that conclusory allegations without specific supporting facts have no probative value' for a party resisting summary judgment." *Id*.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace*

*Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (internal quotation omitted). In fact, the Eleventh Circuit Court of Appeals has "recognized that the FAA creates a presumption of arbitrability such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (internal quotations omitted). In addition, "Florida public policy favors arbitration, and any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration." *Dye v. Tamko Bldg. Prods., Inc.*, 275 F. Supp. 3d 1314, 1317 (M.D. Fla. 2017) (quoting *BKD Twenty-One Mgmt. Co., Inc. v. Delsordo*, 127 So. 3d 527, 530 (Fla. 4th DCA 2012)), *aff'd*, 908 F.3d 675 (11th Cir. 2018).

"Under the FAA, a party seeking to compel arbitration must demonstrate that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 8:13-cv-220-T-27TBM, 2015 WL 10844160, at *3 (M.D. Fla. Mar. 13, 2015) (internal quotations omitted).

## Analysis

### *Compliance with Local Rules*

Amtrak originally filed a motion to dismiss on December 18, 2024. On December 19, 2024, Amtrak filed a supplemental motion to clarify Plaintiff's opposition to the motion through a Local Rule 3.01(g) certification. In the interest of judicial economy, and to avoid confusion, the Court denied as moot the initial

motion. The Court declines to deny the supplemental motion on a hyper technicality (failure to include exhibits) when the exhibits were included with the original motion. Such an argument violates Rule 1 of the Federal Rules of Civil Procedure ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.")

In addition, the Court acknowledges that the motion does not include a memorandum of law, another technical violation of Local Rule 3.01. Although a memorandum of law may have been helpful, the Court will suspend the rule that requires a legal memorandum because the Court is versed in the general law related to arbitration agreements. *See* Local Rule 3.01(a) (requiring legal memorandum); 1.01(b) ("If reasonably necessary to achieve the purpose of these rules, a judge an temporarily modify or suspend the application of any rule, except Local Rule 1.05(a)); 1.01(a) ("These rules advance efficiency, consistency, convenience, and other interests of justice."); *see also* Fed. R. Civ. P. 1 (The rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

***Uniform Electronic Transactions Act, 15 U.S.C. § 7001(c)(1)(B)***

The Court must determine whether, considering these particular facts, there is a valid agreement to arbitrate. *See Adams v. Lashify, Inc.*, No. 6:23-cv-243-PGB-

DCI, 2023 WL 5573822, at *2 (M.D. Fla. Aug. 29, 2023) ("The existence of a valid arbitration agreement is a threshold issue for determining the propriety of a motion to compel arbitration."). When analyzing this issue, a federal court must "'apply ordinary state-law principles that govern the formation of contracts' to determine whether there is a valid agreement to arbitrate under the FAA." *Id*. (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "In Florida, an enforceable contract requires offer, acceptance, consideration, and sufficient specification of essential terms." *Id*. (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)). For a contract to be formed, there must be "mutual assent to certain and definite contractual terms. Without a meeting of the minds on all essential terms, no enforceable contract arises." *Id*. (quoting *Matter of T&B Gen. Contracting, Inc*., 833 F.2d 1455, 1459 (11th Cir. 1987)).

In this case, Plaintiff opposes arbitration by arguing that her electronic acknowledgement of the arbitration agreement does not meet several rules and requirements for her purported electronic signature to be valid under the Uniform Electronic Transactions Act ("UETA") and the Electronic Signatures in Global and National Commerce Act ("E-Sign").[1] Specifically, she appears to claim that Amtrack inhibited the ability of Plaintiff to store or print an electronic record, so the electronic record is not enforceable against her.[2]

---

[1] Florida has enacted the UETA, which facilitates electronic transactions consistently with other law. *See* § 668.50, *F.S.*; *BrewFab, LLC v. 3 Delta, Inc*., 580 F. Supp. 3d 1201, 1209 (M.D. Fla. Jan. 14, 2022). By adopting the UETA, "the Florida Legislature has expressed its intent to treat electronic and traditional agreements equally under the law." *Id*. at 1210.
[2] The portion of the statute that Plaintiff cites to applies only to the use of electronic records when "a statute, regulation, or other rule of law requires that information relating to a

Florida law specifically provides that "[w]hether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." § 668.50(5)(b), *F.S.* Considering the context and circumstances, Amtrak has provided sufficient evidence that Plaintiff consented to the use of electronic signature for the purposes of the UETA through the "click to accept" box and that the signature is attributable to Plaintiff. *See Williams v. Kemper Corp.*, 608 F. Supp. 3d 708, 713 (S.D. Ill. 2022) (explaining that courts frequently find "click-to-accept" agreements sufficient to demonstrate acceptance); *Kamath v. Coinbase, Inc.*, No. 23-cv-03533-CRB, 2024 WL 950163, at *5 (N.D. Cal. Mar. 5, 2024) (holding that a plaintiff affirmatively clicking a "click to accept" box is sufficient to form a contract, including under the UETA); *Taylor v. Dolgencorp*, No. 1:19-cv-132-SNLJ, 2019 WL 6135440, at *3 (E.D. Miss. Nov. 19, 2019) (same).

Plaintiff's conclusory argument that Amtrak "inhibited" her from accessing or retaining the terms and conditions, thereby rendering the entire agreement unenforceable, is unpersuasive. She simply argues that Amtrak did not provide evidence that Plaintiff received a record of the terms and conditions or was afforded the opportunity to select, access, or download the terms and conditions. But Plaintiff does not put forth any affirmative evidence that could create a factual issue as to whether she was inhibited from receiving electronic records. *See*

---

transaction . . . be provided or made available in writing." 15 U.S.C. § 7001(c)(1)(B). Plaintiff does not provide any authority to suggest this statute is relevant in the instant case, or that a technical violation of a portion of § 7001(c)(1)(B) would invalidate an otherwise valid arbitration agreement.

*Bazemore*, 827 F.3d at 1333.

To the extent that Plaintiff argues that she was not on inquiry notice of the arbitration provision due to the font size and coloring of the box, her argument is similarly unpersuasive. Case law has held that even browse wrap agreements or hybrid agreements are enforceable where the hyperlinks to a terms of use agreement are sufficiently conspicuous.[3] *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1302 (M.D. Fla. 2018). In this case, the agreement – which Plaintiff was required to click a box to continue with her transaction – included blue hyperlinks to the terms and conditions and specified that the "binding arbitration agreement" was a term and condition of the ticket agreement. Users of the website – such as Plaintiff – therefore had sufficient inquiry notice that they were agreeing to the terms and conditions, including the binding arbitration provision, by proceeding with their ticket purchase.

---

[3] Clickwrap agreements "require a user to affirmatively click a box on a website acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1302 (M.D. Fla. 2018) (quoting *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015)). In contrast, a browsewrap agreement "consists of a notice on a website stating that the user is agreeing to and is bound by the website's terms of service by merely using the website." *Id.* (citing *Berkson*, 97 F. Supp. 3d at 395). This notice contains hyperlinks that, when clicked, bring the user to a separate browser or window containing the full terms of the agreement. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). Some courts, such as those in this District, also recognize "hybrid browsewrap agreements," described as "browsewrap agreements that resemble clickwrap agreements in that they require the user 'to affirmatively acknowledge the agreement before proceeding with the use of the website," often by clicking a button to create an account, sign up for a subscription, or complete an order. *Temple*, 360 F. Supp. 3d. at 1303-04. These hybrid agreements "weigh[] in favor of valid notice" because a user must "affirmatively acknowledge the agreement before proceeding with use of the website." *Id.* at 1303 (quoting *Nguyen*, 763 F.3d at 1176-77).

*Other Arguments*

Plaintiff attempts to argue that Amtrak has failed to sufficiently establish that she was the person who signed the arbitration agreement rather than another unidentified person who could have done so on her behalf.

"A defendant may meet its 'initial burden to show an agreement to arbitrate' merely 'by attaching a copy of the arbitration agreement purportedly bearing the [plaintiff's] signature' to the motion to compel arbitration." *Tercero v. Sacramento Logistics,* No. 2:24-cv-00953-DC-JDP, 2025 WL 43125, at *3 (E.D. Ca. Jan. 7, 2025). When a plaintiff challenges the validity of that signature, "a defendant is 'then required to establish by a preponderance of the evidence that the signature [is] authentic.'" *Id*. "To raise a genuine issue concerning the validity of the arbitration agreement, Plaintiff must: (1) make an unequivocal denial that there was an agreement, and (2) produce evidence to substantiate the denial." *Schoendorf v. Toyota of Orlando*, No. 6:08-cv-767-Orl-19DAB, 2009 WL 1075991, at *4 (M.D. Fla. Apr. 21, 2009). Although the plaintiff does not need to prove that his or her purported signature is not authentic, the plaintiff must submit sufficient evidence to create a factual dispute. *See id*.

Here, Plaintiff again merely challenges Amtrak's evidence. Plaintiff does not actually deny that she signed the agreement, nor does she submit any affirmative evidence, such as an affidavit, to create a factual dispute. *See id*.; *Gregorius v. Npc International, Inc.*, No. 2:16-cv-593-FtM-99MRM, 2016 WL 6996116, at *4 (M.D. Fa. Nov. 30, 2016) (finding existence of an arbitration agreement after the plaintiff did

not provide any evidentiary support that could establish he did not enter into the agreement, such as an affidavit); *see also Beckman v. Zuffa LLC*, No. CV 21-5570-MWF (AGRx), 2021 WL 5445464, at *3-4 (C.D. Ca. Nov. 15, 2021) ("Plaintiff challenges the sufficiency of Defendant's evidence, but she does not directly dispute that she signed the Arbitration Agreement, either by affirmatively stating that she did not sign the Arbitration Agreement or that she did not recall signing the Arbitration Agreement. […] Plaintiff created no disputes of fact as to whether or not she signed the Arbitration Agreement."). Plaintiff therefore fails to meet her burden.

Plaintiff's due process and "burdensome complexity" arguments border on being frivolous. Requiring Plaintiff to arbitrate pursuant to an arbitration agreement does not violate her due process rights or make her case unduly burdensome, even if she is not required to arbitrate against all parties. *See Kaplan v. Kimball Hill Homes Florida, Inc.*, 915 So. 2d 755, 761 (Fla. 2d DCA 2005) (Canady, J.) (explaining that compelled arbitration does not violate due process rights when the parties agree generally to arbitrate controversies and claims and specifically waive rights of access to courts and trial by jury); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."). Moreover, Plaintiff's concerns about potentially inconsistent results may be a natural occurrence of

multi-defendant cases regardless of whether arbitration is required or not.

### *State Law Claims Against Other Defendants*

Plaintiff's claim against Amtrak has been stayed. The only remaining claims are Florida state claims brought against Defendants Walberto Carrazana Bermudez, M & L Auto Transport, LLC, and Lastre Auto Transport, Inc.

These claims were originally before this Court pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).[4] The Court has discretion to continue to exercise jurisdiction over the state claims or dismiss the claims with leave to proceed in state court. *See Collins v. Merakai Installers, LLC*, No. 1:23cv285-MW/MAF, 2024 WL 2701958, at *1 (N.D. Fla. Mar. 8, 2024); *Alvarado v. Robo Enterprises, Inc.*, No. 6:15-cv-1420-Orl040KRS, 2016 WL 11566331, at *5 (M.D. Fla. June 2, 2016) (granting motion to compel arbitration and staying federal claims while declining to exercise jurisdiction over state claims).

"The Eleventh Circuit has recently emphasized that, '[a]lthough the district court has discretion, concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims are the federal claims are dismissed.'" *Collins*, 2024 WL 2701958, at *1 (quoting *Silas v. Sheriff of Broward Cty.*, 55 F.4th 863, 865 (11th Cir. 2022)). Consequently, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise

---

[4] Although Plaintiff appears to also invoke the Court's diversity jurisdiction, the Court concludes that diversity jurisdiction does not exist because Plaintiff is a citizen of Florida and Defendants Walberto Carrazana Bermudez and Lastre Auto Transport are alleged to be citizens of Florida. The allegations concerning M & L Auto Transport, a limited liability company, are insufficient to determine citizenship.

supplemental jurisdiction over Plaintiff's remaining state law claims. Counts I, II, III, and IV are dismissed without prejudice, with leave to file her claims in a Florida state court as permitted by 28 U.S.C. § 1367(d).

## Conclusion

Plaintiff's conduct with respect to the arbitration agreement communicated assent to its terms. Because Plaintiff agreed to the arbitration provision at the time she purchased a train ticket, Amtrak's motion to compel arbitration is granted. However, Amtrak is not entitled to dismissal of Plaintiff's claims against it. In accordance with Eleventh Circuit precedent, these claims must be stayed rather than dismissed. *See, e.g., Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *3 (M.D. Fla. Nov. 12, 2019) (citing *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992); 9 U.S.C. § 3; *Giraud v. Woof Gang Bakery*, No. 8:17-cv-2442-T-26AEP, 2018 WL 2057814 (M.D. Fla. May 3, 2018)).

The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Therefore, Counts I, II, III, and IV are dismissed without prejudice, with leave to file in a Florida state court.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant National Railroad Passenger Corporation d/b/a Amtrak's Supplemental Motion to Dismiss Plaintiff's Complaint or in the Alternative Motion to Compel Arbitration and Stay Case" (Doc. 12) is

**GRANTED** to the extent the Court finds that Amtrak may enforce the arbitration agreement in this case.

(2) Plaintiff's claim against Amtrak is **STAYED** pending the completion of arbitration, and the parties are directed to notify the Court within 14 days of the resolution of the arbitration proceedings.

(3) Counts I, II, III, and IV are **DISMISSED WITHOUT PREJUDICE**, with leave to with leave to file the claims in a Florida state court as permitted by 28 U.S.C. § 1367(d).

(4) The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 29th day of January, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE